UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **TWITCH LLC**, *doing business as* HALA GEAR, | § § § |
| *Plaintiff*, | § |
| v. | § §   WA-24-CV-00233-KC |
| **BOTE, LLC,** | § § |
| *Defendant*. | § § |

# MEMORANDUM OPINION AND ORDER

This is a patent infringement lawsuit brought by Plaintiff Twitch LLC d/b/a Hala Gear (Twitch) against Defendant BOTE, LLC (Bote). Presently before the Court is Bote's "Motion to Stay Pending Inter Partes Review" (ECF No. 14). The Honorable District Judge Kathleen Cardone (Referring Court) referred the motion to the undersigned Magistrate Judge. For the reasons that follow, Bote's motion is GRANTED.

## I. BACKGROUND

Both Twitch and Bote design and sell stand-up paddle boards and related accessories.[1] On May 3, 2024, Twitch brought this lawsuit, alleging that certain models of Bote's inflatable paddle boards infringe U.S. Patent Nos. 9,862,466 (the '466 Patent) and 10,479,458 (the '458 Patent) (collectively, the Asserted Patents);[2] each patent is entitled "Inflatable Paddle Board." The '466 Patent issued on January 9, 2018, from an application filed on August 7, 2016, and the '458 Patent, which is a continuation of the '466 Patent, issued on November 19, 2019, from an application filed on December 7, 2017.

---

[1] Hall Decl. at ¶¶ 3–4, ECF No. 17-1; Pl.'s Ex. 6 at 7, 9, 11, ECF No. 17-7.

[2] Compl. at ¶¶ 11–13, 17, 25, ECF No. 1.

On June 20, 2024, Bote filed its answer to Twitch's complaint, asserting multiple defenses, including the defense of invalidity; it alleges that the Asserted Patents are invalid for failing to comply with one or more of the conditions of patentability under 35 U.S.C. §§ 102 and 103.[3] Prior to filing the answer here, on May 13, 2024, Bote filed with the U.S. Patent and Trademark Office (PTO) a petition (IPR2024-00889) requesting inter partes review (IPR) of the '458 Patent, and, on June 19, 2024, Bote filed a petition (IPR2024-00892) requesting review of the '466 Patent.[4] The Patent Trial and Appeal Board (PTAB or Board) has not yet decided whether or not to institute the requested IPRs.

On June 26, 2024, Bote filed the instant motion to stay pending the IPRs. On July 8, 2024, the Referring Court referred Bote's motion to the undersigned judge. On July 10, 2024, Twitch filed a response in opposition to the motion,[5] and Bote followed by filing a reply on July 17, 2024.[6]

## II.  DISCUSSION

The Leahy-Smith America Invents Act (AIA), Pub. L. No. 112–29, 125 Stat. 284 (2011), created IPR, 35 U.S.C. §§ 311–319, a new type of post-issuance review proceedings within the PTO, *see Cuozzo Speed Techs. v. Com. for Intell. Prop.*, 579 U.S. 261, 267 (2016) (The AIA "modifies 'inter partes *reexamination*,' which it now calls 'inter partes *review*.'"). IPRs "are intended to be quick and cost[-]effective alternatives to litigation for third parties to challenge the patentability of issued claims." *Wi-Fi One, LLC v. Broadcom Corp.*, 878 F.3d 1364, 1367–68

---

[3] Answer at ¶ 37, ECF No. 11.

[4] Def.'s Mot. to Stay Pending Inter Partes Review at 3 [hereinafter, Def.'s Mot. to Stay], ECF No. 14.

[5] Pl.'s Opp'n to Def.'s Mot. to Stay [hereinafter, Pl.'s Resp.], ECF No. 17.

[6] Def.'s Reply in Supp. of Mot. to Stay [hereinafter, Def.'s Reply], ECF No. 19.

(Fed. Cir. 2018) (en banc), *abrogated on other grounds by Thryv, Inc v. Click-To-Call Techs., LP*, 590 U.S. 45 (2020).  The AIA's IPR provisions permit "'a person' other than the patent owner to petition for the review and cancellation of a patent on the grounds that the invention lacks novelty or nonobviousness in light of 'patents or printed publications' existing at the time of the patent application." *Return Mail, Inc. v. U.S. Postal Serv.*, 587 U.S. 618, 623 (2019) (quoting 35 U.S.C. § 311).  Thus, "in the post-AIA world, a patent can be reexamined either in federal court during a defense to an infringement action" or at the PTO during, *inter alia*, an IPR proceeding.  *Id.* at 624–25.

Having filed two IPR petitions for the Asserted Patents, Bote now moves the Court to stay the litigation until the Board concludes the reviews.  Def.'s Mot. to Stay at 2.  Twitch opposes the motion.  Before addressing the merits of Bote's motion, the Court addresses a preliminary matter: whether this Court, a magistrate court, has the authority to decide the instant motion to stay pending IPR and therefore to enter an order ruling on the motion, or must instead make recommendations to the Referring Court for the motion's disposition in a report.

**A. Whether to Issue an Order or a Report and Recommendation on the Motion to Stay Pending IPR**

Whether to issue an order or report here turns on whether staying a case pending an IPR is a "dispositive" or "nondispositive" matter under the Federal Magistrates Act, 28 U.S.C. § 636, *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 760–62 (5th Cir. 2016)—an issue the Federal Circuit (or the Fifth Circuit) has not had an occasion to address.  Under that Act, if a motion is dispositive, absent consent of the parties (as here), a magistrate judge may only issue a report and recommendation for the motion's disposition, and upon timely objections thereto, the report is subject to *de novo* review by the referring district judge.  28 U.S.C. § 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b); *Davidson*, 819 F.3d at 762.  If, on the other hand, the motion is nondispositive, the

magistrate judge may, even absent the parties' consent, enter an order ruling on the motion, and upon timely appeal, the district judge may reconsider and set aside the order, only if it is "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *Davidson*, 819 F.3d at 762, 764.

Section 636(b)(1)(A) lists the following as dispositive matters in civil cases: motions for injunctive relief, to dismiss for failure to state a claim, for judgment on the pleadings, for summary judgment, to involuntarily dismiss a case, and to certify or decertify a class action. *Davidson*, 819 F.3d at 763.  A motion to stay, much less a motion to stay pending an IPR, is not listed in § 636(b)(1)(A).  An unlisted motion may nonetheless be dispositive if it is "the functional equivalent" of a listed motion.  *Id.* at 764.  For example, in holding that a motion to remand a case to state court (which is not listed in § 636(b)(1)(A)) is a "dispositive matter in which [a] magistrate judge may only make a recommendation subject to the district court's *de novo* review," *id.* at 761; *see also id.* at 763, the Fifth Circuit reasoned that "'a remand order is dispositive insofar as proceedings in the federal court are concerned' and thus is 'the functional equivalent of an order of dismissal,'" *id.* at 764 (quoting *In re U.S. Healthcare*, 159 F.3d 142, 145 (3d Cir. 1998)); *see also U.S. Healthcare*, 159 F.3d at 145 ("While we recognize that after a remand a case may go forward in the state court, still the order for remand *conclusively terminates* the matter in the federal court against the will of the party who removed the case." (emphasis added)).

The present motion to stay is not functionally equivalent to any of the civil-case dispositive motions listed in § 636(b)(1)(A).  For example, an order staying a case pending an IPR is not functionally equivalent to an involuntary dismissal.  28 U.S.C. § 636(b)(1)(A) ("a motion . . . to involuntarily dismiss an action").  Unlike an order remanding a case to state court,

an order staying a case pending an IPR does not "conclusively terminate[] the matter in the federal court." *U.S. Healthcare*, 159 F.3d at 145.  The word "stay," according to its "long-established legal meaning," "denote[s] the 'temporary suspension' of legal proceedings, not the conclusive termination of such proceedings." *Smith v. Spizzirri*, 601 U.S. 472, 477 (2024) (quoting Black's Law Dictionary 1109 (2d ed. 1910)).  A stay to enable an IPR does not foreclose review on the merits by a federal court: "[a] party dissatisfied with the final written decision of the . . . Board under section 318(a) may appeal the decision" to the Federal Circuit. 35 U.S.C. § 319; *see also XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1294 (Fed. Cir. 2018) (The Federal Circuit's affirmance of the Board's decision of unpatentability "has an immediate issue-preclusive effect on any pending or co-pending actions involving the patent[s].").  Thus, the stay "merely shift[s] to the PTO an issue (patent claim validity) involved in the dispute before the district court" but does "not terminate[] the action" with respect to the patent claims challenged in the IPR.  *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) (addressing whether a stay pending an ex parte reexamination, 35 U.S.C. § 301 *et seq.*, was a "final" decision for purposes of appealability under 28 U.S.C. § 1291).

Also, the instant motion to stay is not functionally equivalent to a "motion for injunctive relief."  28 U.S.C. § 636(b)(1)(A).  Although, in its complaint, Twitch seeks an injunction against further infringement of the Asserted Patents by Bote, Compl. ¶ 34, the motion does not ask the Court to address, nor does the Court address in ruling on this motion, the merits of the injunctive relief that Twitch seeks.  *Cf. Reynaga v. Cammisa*, 971 F.2d 414, 415–16 (9th Cir. 1992) (concluding the magistrate judge's order—staying the case until "plaintiff exhausts his state remedies" and concomitantly finding that the plaintiff's "request for injunctive relief[, ]his early release from prison[, ]was precluded because his sole federal avenue for such a remedy was

via a writ of habeas corpus"—was dispositive because § 636(b)(1)(A) "specifically exempts 'motions for injunctive relief' from the category of pretrial matters upon which a magistrate may enter an order").[7]  What is more, the factors for determining whether to stay a case pending an IPR, *see post*, do not include the "likelihood of success on the merits," a hallmark factor for deciding a motion to issue a preliminary injunction, *Natera, Inc. v. NeoGenomics Labs., Inc.*, 106 F.4th 1369, 1375 (Fed. Cir. 2024), which is "clearly . . . a 'dispositive' motion," *see ML-CFC 2007-6 Puerto Rico Props., LLC v. BPP Retail Props., LLC*, 951 F.3d 41, 48 (1st Cir. 2020) (holding that a motion to appoint receiver is properly deemed "dispositive" because in deciding the motion, a court "must consider . . . the same critical merits-based factor that a court must consider before granting . . . a motion to issue a preliminary injunction" (citing *Consol. Rail Corp. v. Fore River Ry. Co.*, 861 F.2d 322, 326–27 (1st Cir. 1988) (listing factors to be considered "when determining the appropriateness of the appointment of a receiver," which include, among others, "the plaintiff's probable success in the action"))).

The remaining listed motions do not present any serious contentions for functional equivalency.  For obvious reasons, a motion to stay pending an IPR is not functionally analogous to a motion "to dismiss or to permit maintenance of a class action."  28 U.S.C. § 636(b)(1)(A).  Nor is such a motion to stay functionally analogous to motions to dismiss for failure to state a claim, for judgment on the pleadings, and for summary judgment: each of these motions requires a court to address the merits of the parties' claims or defenses,[8] but a motion to stay pending an

---

[7] *Cf. also Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83–84 (1981) (stating, in the context of interlocutory appealability under 28 U.S.C. § 1292(a)(1), that the district court's order declining to enter a proposed consent decree had "the practical effect" of refusing an injunction because the proposed decree would have "permanently enjoined respondents from discriminating against black employees," among others).

[8] *See* Fed. R. Civ. P. 12(b)(6) (providing for dismissal of a complaint for "failure to state a claim upon which relief can be granted"); *id.* 12(c) (providing for "judgment on the pleadings"); *Hebert*

- 6 -

IPR does not. *Cf. PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010) ("A federal court's ruling on a motion to stay litigation pending arbitration is not dispositive of either the case or any claim or defense within it.").

Consequently, staying a case pending an IPR is a nondispositive matter. Therefore, this Court, as a magistrate court, has the authority to "determine," 28 U.S.C. § 636(b)(1)(A), and "decide," Fed. R. Civ. P. 72(a), the present motion to stay in an order.

**B. The Merits of the Motion to Stay Pending IPR**

A district court has inherent power to stay litigation pending the outcome of a related PTO reexamination proceeding. *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1361–62 (Fed. Cir. 2016).[9] The decision whether to stay is committed to the sound discretion of the district court. *Viskase Corp. v. Am. Nat. Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001); *Gould*, 705 F.2d at 1341. District courts typically consider three factors when determining whether to stay litigation pending an IPR: (1) whether the stay will simplify the issues raised in the litigation; (2) the status of the litigation at the time the stay is requested; and (3) whether the stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party. *See Murata Mach.*, 830 F.3d at 1360–61. Often, courts consider a fourth factor: "'whether a stay will reduce the burden of litigation on the parties and the court.'" *Id.* at 1362 (quoting *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058, 2015 WL 1069111, at *5 (E.D. Tex. Mar. 11,

---

*Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings."); *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) ("The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)."); Fed. R. Civ. P. 56(a) (providing for summary judgment on "each claim or defense—or the part of each claim or defense").

[9] *See also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").

2015) (Bryson, J.)).  Below, the Court addresses each of the factors bearing on whether to grant a stay of the proceedings here pending the Board's resolution of Bote's IPR petitions.

1. *Simplification of the Issues in the Case*

Although Twitch argues that simplification of the issues is "too speculative" given that the Board has not yet decided whether or not to institute either of Bote's IPR petitions, Pl.'s Resp. at 9, "the Federal Circuit has acknowledged in an analogous context (of [covered business method] review)) that a court may properly stay a case when the Board has not yet decided it will review a patent's validity." *Delta Elecs., Inc. v. Vicor Corp.*, No. WA-23-CV-00726-KC, 2024 WL 2838273, at *2 (W.D. Tex. June 5, 20025) (citing *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1315–16 (Fed. Cir. 2014)); *see also Intell. Ventures II LLC v. JPMorgan Chase & Co.*, 781 F.3d 1372, 1378–79 (Fed. Cir. 2015) ("[O]ur holding does not prevent a district court from choosing to decide a motion [to stay] before the PTAB acts on a [covered business method review] petition.").  Bote's petitions challenge the validity of all claims, asserted and unasserted, of the Asserted Patents.  Def.'s Mot. to Stay at 2.  Therefore, if the Board institutes the IPRs, "the issues in this case could be greatly simplified, given that the Board could find that all or some of the [claims of the Asserted Patents] are unpatentable." *Delta Elecs.*, 2024 WL 2838273, at *2 (internal quotes omitted).  The Court finds that this factor favors granting a stay.

2. *Status of the Litigation*

Bote filed its first IPR petition on May 13, 2024; that was merely ten days after Twitch brought this lawsuit on May 3, 2024.  Bote filed the second petition on June 19, 2024; that was a little over a month after this lawsuit was filed.  On June 26, 2024, Bote filed the instant motion to stay; that was about one and a half months into this litigation.  Bote represents, and Twitch does not dispute, that no discovery has yet taken place and no party has served any infringement or

invalidity contentions. Def.'s Mot. to Stay at 6. Indeed, under the Referring Court's standing order, unless the parties agree otherwise, all discovery, except venue, jurisdictional, and claim construction-related discovery, are stayed until after the *Markman* hearing.[10] The Referring Court has not yet issued any scheduling order governing claim construction proceedings. So, the Court finds that the second factor favors granting a stay.

### 3. *Undue Prejudice or Tactical Disadvantage*

Bote argues that Twitch will suffer no prejudice from a stay of this case pending the Board's resolution of the IPRs. Def.'s Mot. to Stay at 4. It states that the Board's decisions on whether to institute its petitions for IPR are expected by January 2025,[11] and if the reviews are instituted, the Board's final decisions on patentability are expected within 12 months of the institution decisions. *Id.* at 5.[12] Bote points out that at least a few of the accused products have been sold or offered for sale dating back to at least the issuance of the '466 Patent (the patent issued in January 2018) and argues that Twitch's approximately six-year delay in bringing this lawsuit suggests that a stay of a few months will not cause undue prejudice. *Id.* at 5. On that point, the evidence of record indicates that Twitch was aware of these products as early as 2017. Hall Decl. at ¶ 6. Bote also argues that the fact that Twitch did not seek a preliminary injunction

---

[10] Standing Order on Patent Cases at § IV (W.D. Tex. Sept. 14, 2022) (Cardone, J.), https://www.txwd.uscourts.gov/wp-content/uploads/2022/12/Standing-Order-on-Patent-Cases-091422.pdf.

[11] On May 31, and July 24, 2024, the Board granted filing dates for the two petitions. So, it appears that the Board's decisions on institution would be issued by on or about December 24, 2024. *See* 35 U.S.C. § 314(b); 47 C.F.R. § 42.107(b).

[12] *See also* 35 U.S.C. § 316(a)(11) (requiring the Board to make the final determination by not later than 1 year after the institution and permitting an extension, for good cause, of "the 1-year period by not more than 6 months").

suggests that Twitch does not seriously believe that it needs expeditious resolution of this case. Def.'s Mot. to Stay at 5.

Twitch responds that the parties are competitors, so, it is being irreparably harmed by Bote's continued infringement of the Asserted Patents.  Pl.'s Resp. at 7.  Twitch points out that in its complaint, it requests a permanent injunction.  *Id.* at 8.  However, Twitch's chief argument seems to be that Bote took an "unfair advantage" of the parties' pre-suit negotiations by feigning interest in settlement, while it was "secretly" busy preparing petitions for IPR.  *Id.* at 3–5.  Citing emails dated February 9, 12, and 13, 2024, and exchanged between Peter Hall (the founder and CEO of Twitch and, it appears, the named inventor on the Asserted Patents) and an in-house counsel of Bote—Twitch explains that back then, Bote told Twitch that it needed "a few more quarters" and "until June" to discuss resolution, but Bote was "actually" preparing IPR petitions and taking steps to delay any filing of a lawsuit by Twitch; as proof, Twitch points out that Bote filed its first petition, a lengthy one, ten days after the lawsuit was initiated and the other, also a lengthy petition, a month later.  *Id.* at 6.  But for Bote's "intentional pre-suit delay," Twitch says, it would have brought this lawsuit sooner, and the case would have been at a more advanced stage (presumably precluding a stay).  *Id.* at 6.  Twitch argues that Bote's "delay tactics" should not be rewarded and that a stay would further delay this dispute.  *Id.* at 4, 7.

"Delay alone does not usually constitute undue prejudice, because parties having protection under the patent statutory framework may not complain of the rights afforded to others by that same statutory framework."  *Asetek Holdings, Inc v. Cooler Master Co.*, No. 13-CV-00457-JST, 2014 WL 1350813, at *4 (N.D. Cal. Apr. 3, 2014) (cleaned up).  The inquiry into "[w]hether [a] patentee will be *unduly prejudiced* by a stay in the district court proceedings . . . focuses on the patentee's need for an expeditious resolution of its claim."  *VirtualAgility*, 759

F.3d at 1318. Also relevant is any "dilatory motive" or tactic on the part of the movant in filing a PTO post-issuance reexamination petition. *Id.* at 1319.

Here, there is no dispute that the parties are competitors in the same product market. Where, as here, "the parties are direct competitors, the risk of prejudice is higher to the [patentee] than it would be otherwise." *Asetek Holdings*, 2014 WL 1350813, at *5; *see also VirtualAgility*, 759 F.3d at 1318 ("[C]ompetition between parties can weigh in favor of finding undue prejudice."); *Delta Elecs.*, 2024 WL 2838273, at *3 (Although "'eventual money damages might be sufficient to compensate the plaintiff for lost sales,'" "some market-based injuries might be difficult to precisely remedy with money damages." (brackets omitted) (quoting *Davol, Inc. v. Atrium Med. Corp.*, No. 12-cv-958, 2013 WL 3013343, at *4 (D. Del. June 17, 2013))). However, Twitch did not move for a preliminary injunction against Bote—a fact that undercuts its claim that it will be unduly prejudiced by a stay. *See VirtualAgility*, 759 F.3d at 1319 (acknowledging that "there could be a variety of reasons that a patentee does not move for a preliminary injunction," but stating that, although this is not dispositive, "not pursuing a preliminary injunction . . . contradicts [the patentee's] assertion that it needs injunctive relief as soon as possible").

Twitch is correct that it should not be penalized for trying to engage in good-faith negotiations before bringing this lawsuit. Pl.'s Resp. at 6–7; *see also Camelbak Prod., LLC v. Zak Designs, Inc.*, No. 5:21-CV-05109, 2022 WL 2348676, at *3 (W.D. Ark. June 29, 2022) (declining to fault the plaintiff for attempting to amicably resolve the dispute in the years prior to bringing the lawsuit). However, on the record, it appears that the parties' pre-suit negotiations were protracted and sporadic over a period of more than six years that included at least one significantly long gap without any negotiation activities. According to Hall's declaration, in

2017, he first discussed with Bote's then CEO that certain Bote products infringed the '466 Patent, Hall Decl. at ¶ 6, and offered Bote a license to the patent, *see* Pl.'s Ex. 11 at 2 (Feb. 2024 emails between Hall and Bote's in-house counsel), ECF No. 17-12.  At the time, the application that ultimately matured into the '466 Patent (recall, it issued in January 2018) was still pending before the PTO.  The discussions between Hall and Bote's then CEO continued into 2018.  Hall Decl. at ¶ 6.  In September 2018, Bote's CEO sent Hall a draft agreement for the '466 Patent, which Hall rejected because the terms of the agreement were unacceptable to him.  *Id*.

Following that, Hall states, he tried to further discuss resolution of this dispute with a Bote attorney at the CEO's direction—but Hall does not elaborate on when, how often, or for which period(s) of time he engaged in those discussions with the attorney.  *Id.* at ¶ 7.  "Eventually," he learned that Bote was acquired by Kent Outdoor, and in early 2023, Hall contacted Kent Outdoor's in-house counsel.  *Id.* at ¶¶ 8–9.  Kent Outdoor's acquisition of Bote, it appears, occurred in January 2022.  *See* Pl.'s Ex. 8, ECF No. 17-9.

So, it is reasonable to infer that Twitch did not engage in any negotiation activities—at least for one year between January 2022 and early 2023, or perhaps for up to four years between September 2018, when Hall rejected Bote's proposed agreement, and early 2023.  Yet, during this period of inactivity in negotiation, Twitch did not file any patent infringement lawsuit against Bote, and that, in turn, undermines any claim that Twitch would be unduly prejudiced by a stay pending the resolution of Bote's IPRs.

 Further, based on the emails exchanged in February 2024 between Hall and another in-house counsel of Bote, more precisely, of Kent Outdoor, on which Twitch relies to support its contention that Bote intentionally delayed Twitch's filing of this lawsuit—the Court is unable to say that Bote acted with dilatory motive in filing its IPR petitions.  In response to Hall's email

seeking updates since Hall and counsel last spoke, counsel wrote on February 12, 2024, that the CEO of Kent Outdoor stepped down a week ago and the individual who was running Bote recently resigned.  Pl.'s Ex. 10 at 3.  Counsel explained that "[a]t present[,] there's literally no one here who could even make an informed decision on whether to license your IP or not," and "it's going to take a few quarters until things calm down"; counsel asked "[c]an you bear with us until around June?"  *Id.* at 2.  There is no evidence to question the veracity of counsel's statements about the organizational changes at Kent Outdoor or Bote; nor is there any evidence that Bote asked Twitch to forego filing any lawsuit against Bote.  So, from these emails, the Court cannot reasonably infer that counsel's request for additional time was to delay Twitch's filing of any lawsuit so that Bote could have adequate time to prepare and file its IPR petitions.

Indeed, on the following day, February 13, 2024, Hall wrote back, saying that he engaged a law firm and that "we are now moving towards a more aggressive path," *id.*, and in response, Bote's counsel wrote, "[I] [r]espect whatever timeline you're on.  I'll bring this to the attention of management (or what's left of it)," *id.* at 1.  And about nine days later, on February 22, 2024, Twitch followed through by sending a cease-and-desist letter to Bote.  Pl.'s Ex. 12, ECF No. 17-13.  Given that the AIA's IPR provisions allow a party to file a petition "9 months after the grant of a patent," absent a post-grant review, 35 U.S.C. § 311(c), but before "1 year after the date on which [it] . . . is served with a complaint alleging infringement of the patent," *id.* § 315(b), Bote had the legal right to proceed with the preparation for and filing of its IPR petitions.

In sum, given that there is no evidence of dilatory motive by Bote, that Twitch had not engaged in any pre-suit negotiations for at least one year or perhaps for up to four years, and that Twitch did not seek preliminary injunctive relief, the Court finds that this factor is neutral.  *Cf. VirtualAgility*, 759 F.3d at 1319–20 (stating the patentee's nearly 1-year delay in pursuing suit

and not seeking preliminary injunctive relief belie the patentee's claims that it will be unduly prejudiced by a stay).

### 4. Reduction of the Burden of Litigation

As discussed above, if the Board institutes the requested IPRs by January 2025 (five months from now), the issues in this case could be greatly simplified, and that promises a great reduction of the burden of litigation on the parties and the Court. *See VirtualAgility*, 759 F.3d at 1314 n.4 ("Simplifying issues would as a general matter always reduce the burdens of litigation on the parties and the court."). A "stay will relieve the parties and the district court of having to expend substantial resources on claim construction and both noninfringement and invalidity defenses." *Versata Software, Inc. v. Callidus Software, Inc.*, 771 F.3d 1368, 1375 (Fed. Cir. 2014), *vacated on other grounds*, 780 F.3d 1134 (Fed. Cir. 2015). If, on the other hand, the Board does not institute the requested IPRs, then "little time is lost." *Delta Elecs.*, 2024 WL 2838273, at *4.

In the meantime, if the Court denies a stay now, the parties will have to expend substantial resources in exchanging contentions, filing claim construction briefs, and preparing for a *Markman* hearing. *See* Standing Order on Patent Cases at § V, *supra*. Moreover, denying the stay now would also saddle Twitch with greater expenses for proceeding before the Court *and* the PTO simultaneously. *See* 37 C.F.R. § 42.107 (providing that the patent owner may file a preliminary response to the petition); *id.* § 42.108(c) (providing that the Board's decision on institution "will take into account a patent owner['s] preliminary response where such a response is filed"). All of these burdens may be avoided if the Court stays the case now. The Court finds that this factor weighs in favor of granting a stay.

\* \* \*

Recall that Congress intended IPRs "to be quick and cost[-]effective alternatives to litigation." *Wi-Fi One*, 878 F.3d at 1368. Here, three of the four stay factors weigh in favor of a stay in this case: simplification of the issues, the status of the litigation, and reduction of the burden of litigation on the parties and the Court. The undue prejudice factor is neutral. Based on the evidence and arguments presented here, the Court finds, on balance, that this case should be stayed pending the Board's resolution of Bote's IPR petitions.

### III.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant BOTE, LLC's Motion to Stay Pending Inter Partes Review (ECF No. 14) is **GRANTED** and therefore, that all proceedings and deadlines in this matter are **STAYED** pending further order.[13]

**IT IS FURTHER ORDERED** that Defendant shall **FILE** a status report with the Court **not later than seven days** after the Board decides whether to institute each IPR.

**IT IS FINALLY ORDERED** that the parties shall **FILE** quarterly status reports apprising the Court of the status of the IPRs, including any significant actions and any appeal to the Federal Circuit, with the first quarterly status report due on or before **October 15, 2024**.

So ORDERED and SIGNED this  21st  day of August 2024.

_____
ANNE T. BERTON
UNITED STATES MAGISTRATE JUDGE

---

[13] This Court's stay order does not apply to Twitch's and Steamboat Paddlesports LLC's "Motion to Join Steamboat Paddlesports LLC as a Plaintiff Pursuant to Federal Rule of Civil Procedure 25(c)" (ECF No. 23)—which was filed after the Referring Court referred Bote's motion to stay to the undersigned judge and the briefing on the motion was completed.